UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAMES A. SANDERS, JR., and
NANETTE SANDERS,

    Plaintiffs,

v.     402CV141

LULL INTERNATIONAL, INC.,

    Defendant,

BUILDERS INSURANCE GROUP, INC.,

    Intervenor.

## ORDER

### I. INTRODUCTION

Plaintiffs James A. Sanders and his wife sued Lull International, Inc. (Lull) and (since dismissed) Rental Service Corporation over injuries James suffered when a Lull forklift on which he was working turned over.[1] Doc. # 1. The workers' compensation carrier that paid James workers' compensation benefits -- Builders Insurance Group, Inc. (BIG) -- intervened to advance, to date, its $230,813 subrogation lien. Doc. # 213 at 6. Having recently settled with Lull -- the remaining defendant in this case -- James now moves to dismiss this entire action with prejudice. Doc. # 217. BIG opposes, arguing that it is first entitled to an evidentiary hearing to resolve its workers' compensation lien against the Lull settlement proceeds. Doc. # 218.

### II. ANALYSIS

"O.C.G.A. § 34-9-11.1(b) ... provide[s] for a subrogation lien in favor of the employer or insurer against the recovery from a third party tortfeasor. The employer or insurer has the right to intervene in any action to enforce the lien." GA. WORKERS' COMP. LAW & PRACTICE § 8-4 (4th ed. 2006). "[R]ecovery in subrogation is limited to the recovery of the amount of workers' compensation benefits paid." GA. AUTOMOBILE INSURANCE LAW § 54:3 (2005 ed.).

> Although [O.C.G.A. § 34-9-11.1] was enacted to provide employers with a right of subrogation, a primary legislative concern was that the injured employee first be made whole. That concern comports with the Georgia public policy that an insurer may not pursue subrogation unless and until the insured has been completely compensated for all losses. This is a mixed question of law and fact.

Id. (quotes and footnotes omitted).

BIG's recovery on its lien, then, can occur only if James has been fully compensated, taking into consideration both the workers' compensation benefits he received and the amount of his recovery on his third party claim against Lull. GA. WORKERS' COMP. LAW & PRACTICE § 8-4 (4th ed. 2006). BIG must prove full and complete compensation whether the case settles or goes to verdict. Id.; City of Warner Robins v. Baker, 255 Ga.App. 601, 604 (2002).

BIG thus has wanted James to present all of his special damages evidence to the jury in this case so that it could prove that his "combined tort and workers' compensation recovery render him fully and completely compensated." Doc. # 199 at 43. But that request led the Court into a procedural morass because the subrogation

---

[1] For convenience, the Court hereafter will reference only James as "the plaintiff," since his wife's loss-of-consortium claim rides on James's underlying claims.

statute prescribes no method by which an insurer like BIG can establish that an injured employee has been fully and completely compensated by a recovery from a third party tortfeasor. GA. AUTOMOBILE INSURANCE LAW § 54:3 (2005 ed.).

"Nevertheless, courts have suggested that the most practical method is to use a special verdict form, whereby the finder of fact expressly delineates the items of economic and noneconomic loss." *Id.* That has been BIG's strategy (hence, it has moved for a "special verdict" at trial, doc. # 198), because

> [w]ithout a special verdict form, it cannot be determined what portions of the award the jury applied toward economic and noneconomic losses. In other words, it is impossible to determine whether a plaintiff has been fully and completely compensated for his losses in the absence of a special verdict. Consequently, the outcome in many such situations would be that a workers' compensation subrogation lien could not be enforced. The same is true when the injured employee negotiates a settlement of his claim against the tort-feasor for a lump sum.

*Id.* (quotes, alterations and footnotes omitted).

Here there will be no special verdict (hence, BIG's "special verdict" motion # 198 is denied as moot) because Lull has settled with James on confidential terms.[2] BIG thus wants to know the amount of that settlement so that it can prove up its lien. Doc. # 207. At the same time, it does not want *the Court* to know the amount lest the Court be tainted by that knowledge while resolving this subrogation matter without a jury. Thus, BIG wants the Court to order disclosure of the settlement amount to it but *not* to the Court. Doc. # 209.

Meanwhile, the Court must determine the lien

> by comparing the sum of the workers' compensation benefits paid by the intervenor and the amount of the employee's recovery in the third-party action, to all economic and noneconomic losses caused by the injury. For purposes of OCGA § 34-9-11.1(b), a recovery includes the proceeds of a settlement. GEMC paid $76,509.75 in benefits and Garnto received $175,000 from the settlement with Pritcherd and Taylor. In order for GEMC to recover on its lien, the trial court was required to conclude that the sum of these amounts, $251,509.75, exceeded Garnto's economic and noneconomic losses.

*Garnto*, 266 Ga.App. at 453 (cites and footnote omitted).

In moving the Court to dismiss his case against Lull with prejudice -- and his entire case

---

[2] Again, even in a settlement context, BIG has the burden of proving that James was fully and completely compensated. *Georgia Elec. Membership Corp. v. Garnto*, 266 Ga. App. 452, 455 (2004) (In asserting subrogated claim against employee's recovery from third-party alleged tortfeasors for lien arising from payment of workers' compensation benefits, employer had burden of showing that employee had been fully and completely compensated). In that respect, there is no jury trial right to resolution of a subrogation lien because the issue mixes questions of law and fact. *Baker*, 255 Ga.App. at 602 (full and complete compensation a mixed question of law and fact); *see also Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga.App. 866, 872-73 (2002) ("The trial court alone must determine if the employee has been fully and completely compensated; neither party has a right to a jury determination of whether the injured employee has been fully and completely compensated under [§ 34-9-11.1] (b)").

2

outright -- James does not acknowledge BIG's lien rights. Doc. # 217 at 1. He cites *Int'l Maint. Corp. v. Inland Paper Bd. & Packaging, Inc.*, 256 Ga. App. 752, 569 S.E.2d 865 (2002). *Id.*

Citing *Bearden v. Beeler*, 2006 WL 1980149 (W.D.Ky. 7/11/06) (unpublished) (applying Georgia law), BIG concedes that it "has no standing to oppose the dismissal of Defendant Lull." Doc. # 218 at 1. However, it contends that "such dismissal does not operate to extinguish Intervenor's claim against James Sanders." *Id.*

Put another way, BIG disagrees with James's claim "that [he] settled with Defendant for less than full and complete compensation." *Id.* It therefore "requests a full and complete evidentiary hearing for same." *Id.* For that reason, then, it opposes outright dismissal. *Id.*

The Court concludes that James's motion confuses a couple of important distinctions. Again, O.C.G.A. § 34-9-11.1 governs the employer's (or workers' compensation carrier's) subrogation rights. If an employee like James pursues a third-party tortfeasor under § 34-9-11.1(b), then the employer or carrier (hereafter, employer/carrier) has a right to intervene in the employee's lawsuit "to protect and enforce [its] lien." *Id.* That means that if the employee settles, the intervenor can prevent dismissal of the case until its lien is resolved.

If the employee does *not* pursue the tortfeasor, the employer/carrier can do so under § 34-9-11.1(c), which sets up a direct claim by the employer/carrier against the tortfeasor. When that happens, the court cannot dismiss the tortfeasor -- even if the employee settles with him -- until the employer/carrier's lien is resolved. *Bearden*, 2006 WL 1980149 at * 10.

It is only where the employee sues the tortfeasor *and* the employer/carrier fails to intervene that the employer/carrier will lack standing to prevent dismissal -- since in that case it simply is not a party to the action. *Canal*, 256 Ga.App. at 868. James's dismissal motion seems to rest on this premise. *See* doc. # 217 at 1 (seeking dismissal with prejudice of the entire action).

Of course, that premise is flawed because James brought this action directly against Lull and BIG *did* intervene, so this action proceeded under § 34-9-11.1(b). When a settlement is reached in a § 34-9-11.1(b) action,

> the [employer's or carrier's] lien attaches to the recovery, "that is, to the money now in the hand of the injured employee." *Powell v. Daniels Construction & Demolition*, 501 S.E.2d 578 (Ga.App.1998). After the employee has settled with the defendant and the lien has attached to the proceeds, there is no longer any purpose for intervention. An employer/insurer cannot continue to pursue a claim against the defendant [here, Lull] when the intervention was pursuant to subsection (b). *International Maintenance Corp.*, 569 S.E.2d at 869-70.

*Bearden*, 2006 WL 1980149 at * 10.

BIG therefore is correct. Its lien attached to the Lull settlement dollars now held by James. Lull therefore should be dismissed from this case, but the case itself should not be dismissed. Instead, BIG may now pursue its lien against James's settlement proceeds (and thus James). *See id.* How that should be done, however, is not detailed to any degree by case law or statute.

The Court therefore will review some guiding principles in light of the upcoming evidentiary

3

hearing. First, the question at this juncture is whether James "was fully and completely compensated for his losses within the meaning of OCGA § 34-9- 11.1(b), not within the meaning of general principles of tort law." *Homebuilders Ass'n of Ga. v. Morris*, 238 Ga.App. 194, 196 194 (1999). It follows that this Court

> may not consider the affirmative defenses of contributory/comparative negligence or assumption of the risk in determining whether or not the employee has been fully and completely compensated for his injuries, because the employee's total economic and noneconomic losses make up the full and complete compensation unreduced by such defenses under the Act. [And, w]here no economic benefits have been paid, neither the employer nor the insurer can assert a subrogation lien against noneconomic damages, *i.e*, pain and suffering.

*Bearden*, 2006 WL 1980149 at * 8 (quotes, cites and alterations omitted).

Second, this Court determines whether James has been fully compensated by considering the amount he actually received from Lull *after* subtracting any attorney's fees and costs. *Warner Robins*, 255 Ga.App. at 604 (court reduced $90,000 settlement by attorney's fees and costs to arrive at the $58,725.80 amount actually received by the injured plaintiff); *Bearden*, 2006 WL 1980149 at * 9.[3]

Finally, BIG's showing that James has been fully compensated (and thus, that it is entitled to recover from the Lull settlement some or all of what it paid to him in workers' compensation benefits) "is not presumed where the settlement does not indicate what portion was allocated to economic or non-economic losses." GA. SOFT TISSUE INJURIES (*Third party liens and right to reimbursement*) § 8-4 (2006).

BIG is proposing a two-part evidentiary hearing. With the use of a special verdict form that it has proffered, the Court would first hear live witness testimony and selected deposition excerpts to determine the complete amount of James's economic and non-economic damages. Doc. # 213 at 21. In the second half, BIG would compare the Court's finding on that amount to the total amount James recovered "from all sources (tortfeasors and his workers' compensation carrier) -- thus allowing [BIG] to meet its burden in proving that [James's] recoveries exceed his total damages -- entitling [BIG] to recovery on its lien." *Id.*

James raises no objection to this procedure, and the Court will follow it. He represents in his pre-hearing brief, however, that

> the total stipulated value of the medical care associated with this event is $268,311.19. The total past lost wages according to the Rule 26 Report and deposition of Professor W. Francis Rushing, Ph.D, is $66,059.00. Dr. Rushing opines that the future wage loss incurred by Mr. Sanders is $598,405.00 with future lost

---

[3] Note that where the employer or insurer has paid an attorney to assist in generating recovery from a tortfeasor, O.C.G.A. § 34-9-11.1(d) provides "for apportionment of attorney fees between the employee's attorney in the third party recovery and the attorney for the employer and insurer," GA. WORKERS' COMP. LAW & PRACTICE § 8-4 (4th ed. 2006). BIG does not invoke § 34-9-11.1(d) here.

It does, however, seem to acknowledge that James is authorized to deduct his attorney's fee from BIG's recovery. *See* doc. # 213 at 6 ¶ 15 (BIG's proposed findings that BIG "is entitled to recovery of its lien for $230,813.38 (less 40% attorney's fees and proportional costs and expenses incurred by Plaintiffs)").

4

fringes at $149,601.00. Thus, the total wage loss is $814,065.00. When this is added to the medical expenses the total special damages is $1,082,376.19. This does not include anything for general damages.

Doc. # 215 at 8. BIG essentially says that James is a malingerer, has been claiming for medical expenses unrelated to his on-the-job injury, and has otherwise been able to return to work but instead has been milking workers' compensation benefits. Doc. # 213 at 3-5.

While the Court is not accepting either set of assertions as true, it cannot but help but notice, in light of the above governing principles, the current size of BIG's lien ($230,000), and James's claimed ($268,311.19) medical damages alone. In light of those facts, the Court warns BIG not to continue with this proceeding if it does not in good faith believe that James has been "excess-compensated" by Lull's settlement.

There is no suggestion that any attorney here is "unreasonably and vexatiously" multiplying proceedings within the meaning of 28 U.S.C. § 1927. But since the parties filed their pre-hearing proposed findings and conclusions of law, the Eleventh Circuit has held that § 1927 sanctions may be imposed against even those who act *without* specific purpose or intent to multiply proceedings. *Amlong & Amlong, P.A. v. Denny's, Inc.*, ___ F.3d ___, 2006 WL 2105980 at * 9 (11th Cir. 7/31/06).

The Court's concern here is that "malingering" and "milking" allegations are far easier to make than to prove, let alone dollar-quantify. BIG is proffering just one medical doctor as a witness, doc. # 213 at 15, and -- with James's testimony -- seeks to prove not only malingering/milking, but also what dollar amount of medical expenses and lost wages were *not* bona fide and were *not* caused by the work-related injury. That's a pretty tall order.

In that regard, James points out that BIG did not even pay for all of James's medical expenses,[4] so it is easy to see how BIG's task can get complicated very quickly here. On top of that, it will *not* be enough for BIG to raise a mere "odor" about James's alleged malingering.

Instead, BIG's assertions must be dollar-quantified, with reasonable certainty free of speculation -- the standard applied in both tort and contract-based cases. *See Lee v. Thomason*, 277 Ga.App. 573, 578 (2006); *Crawford v. Dammann*, 277 Ga.App. 442, 449 (2006) (Damages cannot be left to speculation, conjecture, or guess-work and must be proven with reasonable certainty); *Champion v. Dodson*, 263 Ga. App. 286, 287 (2003); *Worker's Compensation Legal Clinic of Louisiana v. BellSouth Telecomm., Inc.*, 374 F.Supp.2d 1215 1218 (N.D.Ga. 2005).[5] It is difficult to see how

---

[4] James claims that he

> incurred the stipulated amount of $268,311.19 for his medical treatment associated with this event. Of this, BIG has paid $143,532.26. Thus, $124,778.93 of James Sanders['s] medical expenses were *not* paid by BIG and that amount of James Sanders'[s] Recovery in the Third Party Action is not subject to being considered as available to satisfy the lien claimed by BIG.

Doc. # 215 at 8 (emphasis added).

[5] Normally, a "plaintiff who establishes injury causation but fails to furnish sufficient data to enable a jury to estimate actual damages with reasonable certainty may still recover nominal damages." *McElmurray v. Augusta-Richmond County*, 274 Ga.App. 605, 620 (2005). That exception obviously would not apply to subrogation

BIG can do all of that.

In the meantime, the Court grants in part and denies in part BIG's "Motion to Disclose" and *in limine* motions. Doc. ## 207, 209. It agrees with James that, under the principles set forth above, James need not produce any evidence since it is BIG's burden to prove excess compensation. And it is simply impossible for this Court to measure that amount without knowing what amount of settlement dollars James received.

At the same time, it is unnecessary for the Court to know what that amount is until it reaches "phase two" of the proceeding as proposed by BIG (*i.e.*, after the Court has found and thus determined the amount of James's job-injury related damages). So, James shall not disclose to the Court the amount Lull paid him until the start of phase two. In contrast, he must disclose that figure to BIG now so that BIG can both evaluate (consistent with § 1927) whether it is worth proceeding further, as well as prepare for phase two.

Finally, the Court dismisses Lull with prejudice and realigns the parties to reflect the fact that BIG is now the plaintiff and James and his wife Nanette are now the defendants. Query, however, whether Nanette should remain a part of this case if (*e.g.* for taxability reasons) Lull's settlement payment specifies a separate amount for her consortium claim. If the amount of her settlement is not relevant here, then she arguably should be dropped as a part. For that matter, the fact that she may be necessary as a witness (*e.g.* for the purpose of separating the dollar-value of her share of the Lull settlement from James's) is easily addressed by subpoena, and not by keeping her as a party.[6]

### III. CONCLUSION

The Court **DENIES** the motion (doc. # 217) of plaintiffs James and Nanettte Sanders to dismiss this case. The Court also **GRANTS** the motion *in limine* (doc. # 209) of intervenor Builders Insurance Group, Inc., and **GRANTS** its "disclosure" motion (doc. # 207) by directing James to disclose the amount of his Lull settlement to BIG, but *not* to this Court until as instructed above. The Court **DISMISSES** with prejudice defendant Lull International, Inc., from this case, and directs further briefing (*see supra* n. 6) on Nanette Lull's status as a party here.

Next, the Court realigns the remaining parties as described in Part II *supra*. All future captions therefore shall now read: "Builders Insurance Group, Inc. v. James A. Sanders and Nanette Sanders." Finally, BIG is directed to reexamine its case consistent with the legal principles and cases.

---

[6] BIG has provided for Nanette on its special verdict form:

> The special verdict form references both Plaintiffs due to the fact that it will be necessary to calculate the fair measure of damages to Nanette Sanders, and the fair value of the settlement which should be apportioned to her claim; before then comparing James Sanders'[s] damages to his net recovery (gross minus Nanette Sanders' portion).

Doc. # 213 at 2 n. 1; *see also id.* at 24-25 (special verdict form). The Court is having difficulty grasping where BIG is going here. If Lull paid Nanette, say, $20,000 for her loss of consortium claim, how would that amount in any way figure into BIG's subrogation lien, which can only attach to money paid to James for *his* damages? The parties shall brief this matter within 15 days of the date this Order is served (as an alternative, they may proffer a joint Consent Order dropping Nanette from this case).

practical considerations discussed in Part II *supra*.

This 14 day of August, 2006.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA